IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BOBBY RAY SHAMBURGER, JR., #269 837, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:19-CV-272-WKW-SMD |
| | ) | |
| WARDEN KARLA JONES, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

This case arises from a deadly fight between Plaintiff Bobby Ray Shamburger, Jr. ("Shamburger"), and a fellow inmate, Rodney Davis. Shamburger, who is currently incarcerated at the Donaldson Correctional Facility, in Bessemer, Alabama, has filed pro se this 42 U.S.C. § 1983 action for damages for certain claimed violations of his federally protected rights while confined in the Ventress Correctional Facility ("Ventress"), in Clayton, Alabama. Doc. 1. Plaintiff brings suit against Warden Karla Jones,[1] Ventress Correctional Lieutenant Elijah Rouse, and Ventress Correctional Officers Lewis McDonald and Derius Lewis ("Defendants"). Plaintiff claims Defendants failed to protect Plaintiff when he was attacked by another inmate in February 2018. Plaintiff maintains, because Defendants failed to protect Plaintiff, not only was Plaintiff stabbed during an assault, but Plaintiff also ultimately killed the attacking inmate in self-defense. For relief,

---

[1] In their answer and special report, Defendants assert Defendant Warden Jones is currently employed by the Alabama Department of Corrections as a Correctional Warden at Kilby Correctional Facility. Doc. 25 at 1.

Plaintiff seeks monetary damages and requests that litigation costs be taxed against Defendants.

Defendants filed an answer, special report, supplemental special report, and supporting evidentiary materials addressing Plaintiff's claims for relief.  Docs. 25, 33.  In these filings, Defendants deny they acted in violation of Plaintiff's constitutional rights. Doc. 25.  Upon receipt of Defendants' special report and supplemental special report, the Court entered an order which provided Plaintiff an opportunity to file a response to Defendants' special report.  Doc. 34.  This order advised Plaintiff that his response should be supported by affidavits or statements made under penalty of perjury and other evidentiary materials.  *Id*. at 1-2.  The order further cautioned Plaintiff that unless "sufficient legal cause" is shown within ten days of entry of this order "why such action should not be undertaken, the court may at any time [after expiration of the time for his filing a response] and without further notice to the parties (1) treat the special report, as supplemented, and any supporting evidentiary materials as a motion for summary judgment and, (2) after considering any response as allowed by this order, rule on the dispositive motion in accordance with law."  *Id*. at 2.  Plaintiff filed a response to Defendants' special report.  Doc. 35.  This case is now pending on Defendants' motion for summary judgment. Upon consideration of such motion, the evidentiary materials filed in support thereof, and Plaintiff's opposition, the undersigned recommends that Defendants' motion for summary judgment (Doc. 25) be**GRANTED**.

### I.   Standard of Review

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").   The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof.  *Id.* at 322-324.

If the defendants meet their evidentiary burden,.the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-594 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file,"

3

demonstrate there is a genuine dispute of material fact) (internal quotations omitted).  The court will also consider "specific facts" pleaded in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).  A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the non-moving party and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  In this case, Plaintiff has failed to establish that there is a genuine issue as to a material fact to preclude summary judgment.

## II.    Factual Background

By way of overview, Plaintiff asserts Defendants violated his constitutional rights when they failed to protect him from an attack by another inmate in February 2018. *See* Doc. 1.

Plaintiff's claims stem from the following facts, viewed in the light most favorable to Plaintiff:

On February 13, 2018, Defendant Rouse submitted a "disorderly conduct" incident report detailing an altercation between Plaintiff and inmate Rodney Davis that occurred on February 5.  Doc. 25-2 at 2.  Pursuant to the report:

4

On February 5, 2018, at approximately 9:00 am, [Defendant Lewis] observed inmates [Plaintiff] and Rodney Davis…, on the yard between Dormitories E and F in a verbal disagreement. [Defendant Lewis] contacted Correctional Officer Derjuan Smith via handheld radio and advised him to report to the porch area of Dormitory F. Both inmates were then questioned concerning the argument. Inmate Davis stated 'Zoom and wham. That's all.' [Plaintiff] did not reply. Both inmates were verbally reprimanded on their negative behavior and ordered to report back to their assigned dormitories. [Defendant Rouse] was notified and informed that both inmates were separated without incident or any further aggression. [Defendant Lewis] also informed [Defendant Rouse] that the 'Zoom and wham' comment is what most inmates have been stating when they opt not to comment in detail on an incident. At approximately 10:00 am, [Defendant Lewis] discovered an inmate-made knife in the lobby area, approximately seven (7) inches in length. The knife was wrapped in white cloth on one end and sharpened to a point on the other end. [Defendant Lewis] notified [Defendant Rouse] and questioned inmate Davis and several inmates in the dorm concerning the knife. Inmate Davis stated, 'Do you think if that was mine, I would have told you?' Other inmates in the dormitory indicated to [Defendant Lewis] that the knife may have belonged to inmate Davis. The knife was placed in an evidence bag and placed in the Shift Commander's Office with the additional common area contraband for later disposal.

*Id*. One day after the February 5 verbal altercation, Plaintiff and inmate Davis were involved in an assault. *Id*. at 6. Pursuant to the incident report narrating the incident:

On February 6, 2018, at approximately 11:30 am, [Defendant McDonald] entered Dormitory F4 and observed blood on the facial area of inmate Rodney Davis. . . . [Defendant Rouse] was notified and inmate Davis was escorted to the Health Care Unit for medical assessment. It was discovered that inmate Davis was involved in a physical altercation with [Plaintiff], over a cellular phone. During the altercation a weapon was used by both inmates. The weapons were not recovered. [Plaintiff] was escorted to the Health Baptist Care Unit for medical assessment (see attached assessment). Photographs were taken of both inmates (see attached photos). [Plaintiff] admitted to [Defendant Rouse] that inmate Davis had attempted to steal a cellular phone from him ([Plaintiff]) on the previous day. No cellular phone was discovered during a routine search. [Plaintiff] stated, 'He got what he deserved.' [Defendant Lewis] informed [Defendant Rouse] that both inmates ([Plaintiff] and Davis) were also involved in a verbal altercation on the previous day and both were separated without incident. Nurse Coy Flenory informed [Defendant Rouse] that inmate Davis would need to be

5

transported to Baptist South in Montgomery, Alabama via Life Flight.  At approximately 12:00 pm, Clayton Rescue exited Ventress Backgate with inmate Davis.  At approximately 12:42 pm, inmate Davis exited Clayton Municipal Airport via Life Flight enroute to Baptist South Transport Vehicle #1943.  Correctional Captain Pamela Harris, [Defendant Warden Jones,] and investigator James Ranson were notified.  At approximately 1:17 pm, Officer Glenn arrived at Baptist South with inmate Davis.  At approximately 1:55 pm, Officer Walker arrived at Baptist South.  Inmate Davis was admitted to Baptist South.  Kilby Correctional Facility was notified.  Inmate Davis was subsequently placed on Kilby's count.  Ventress Institutional County Board was adjusted accordingly.

*Id*.  According to inmate Davis' February 6, 2018, inmate body chart (medical examination), at 11:37 a.m., inmate Davis asserted, "I can't breath [sic] they stuck me," and shows that inmate Davis suffered several stab wounds and lacerations to his torso, head, and face.  *Id*. at 9.  Later that same day, Plaintiff also received a medical examination.  *Id*. at 10.  According to Plaintiff's body chart, Plaintiff stated that he "fell off the bed," and reflects that Plaintiff had a laceration on the right side of his body.  *Id*.; *see also* Doc. 35-4 at 1.

On February 14, the February 6 incident report was amended to include the following addendum:

> Upon further investigation, it was discovered that inmate Alexceon Richardson…, was involved in the assault on inmate Davis. On February 11, 2018, inmate Davis was pronounced deceased.  On February 12, 2018, inmate Richardson was placed in Segregation Cell D2-1A, and received disciplinary action for Assault on an inmate with a weapon.

Doc. 25-2 at 8.  Additional facts are set forth as necessary.

### III.    Discussion

In his complaint, Plaintiff alleges Defendants violated his constitutional rights when, on February 6, 2018, Plaintiff was assaulted by inmate Davis while sleeping in "F-

6

Dorm." Doc. 1 at 3.  Specifically, Plaintiff alleges:

> Between Monday February 5, 2018 and February 6, 2018 I Bobby Ray
> Shamburger, Jr. and Rodney Davis were in multiple altercations outside and
> inside F-Dorm at Ventress Correction Facility.   On 2-5-18 I Bobby Ray
> Shamburger, Jr. was outside on the porch of F-Dorm when Inmate Rodney
> Davis had words he telling me Bobby Ray Shamburger, Jr. he gone kill me.
> In return I'm telling him he ain't gone do notting to me.  As this going on he
> pull a prison made knife out Officer Derius Lewis right there walking up he
> see the weapon call for Officer Derjuan M. Smith to come outside F-Dorm.
> Officer Smith past me roming out I'm standing right there.  Officer D. Lewis
> chase Inmate Rodney Davis inside E-Dorm and that was end for that day.
> See Incident Report Number 18-00335. . . .  On 2-6-2018 Officer Lewis H.
> McDonald post was F-Dorm and he wasn't on his post.  Around 11:30 am I
> Bobby Ray Shamburger was sleep in F-Dorm 4 side when Rodney Davis
> entered the door looking for me from the many witness giving statements to
> agent Ranson he walk around the dorm two times trying to find me.  I'm
> unaware because I'm sleep someone woke me up as I'm getting up Inmate
> Davis coming around the corner he run up on me stabbing me in my right
> pectoral with a prison made knife an return trying to defend myself I black
> out stabbing Inmate Davis multiple times.  I heard somebody say stop Bobby
> that's enough he set up and walk off.  2-10-2018 four days later Inmate Davis
> died from his injuries.  Note, another Inmate was charge with murder along
> with me he didn't have notting to do with it Alexceon Richardson.[2]

Doc. 1-1 at 1.

Plaintiff maintains, Defendants violated his Eighth Amendment constitutional rights when

they (a) acted with deliberate indifference and gross negligence in failing to protect

Plaintiff after the February 5 verbal incident between Plaintiff and inmate Davis; and (b)

failed to provide Plaintiff adequate security when Defendant McDonald, who was assigned

to F-Dorm, was not present.  Doc. 1 at 2-3.  Because of the assault, Plaintiff maintains he

suffered injury and was compelled to kill inmate Davis in self-defense.  *See id*.  Plaintiff

---

[2]    Plaintiff's statement of facts expressed here are neither altered nor edited, and represents Plaintiff's original
assertions in his complaint.

requests monetary damages and costs of litigation be taxed against Defendants. *Id.* at 4.

Defendants contend, *inter alia*, that Plaintiff's allegations fail to state a claim for either deliberate indifference or failure to protect, Defendants did not violate Plaintiff's constitutional rights, and Defendants are entitled to immunity in their official and individual capacities. *See* Doc. 25.

### A.   Sovereign Immunity

To the extent Plaintiff sues Defendants in their official capacities, they are immune from monetary damages. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997). Defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### B.    Qualified Immunity

Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity is not merely a defense against liability but immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) (quotation marks and citation omitted).  To receive qualified immunity, the public official must first prove he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  There is no dispute that Defendants here were acting within the course and scope of their discretionary authority as prison officials when the incidents occurred.  Plaintiff must, therefore, allege facts that, when read in a light most favorable to him, show that Defendants are not entitled to qualified immunity.  *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To satisfy his burden, Plaintiff must show two things:  (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established."  *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004).  "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. . . . In other words, existing precedent must have placed the statutory or constitutional question

9

beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations and quotation marks omitted) (alteration in original).  "Clearly established law" means (1) "a materially similar case has already been decided"; (2) "a broader, clearly established principle that should control the novel facts of the situation"; or (3) "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary."  *Gaines v. Wardynski*, 871 F.3d 1203, 1208-09 (11th Cir. 2017) (citations omitted).  The controlling authority must be from "the Supreme Court of the United States, the Eleventh Circuit, or the highest court in the relevant state."  *Id.* at 1209.

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law."  *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citations and quotation marks omitted).  The Eleventh Circuit "has stated many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant."  *Gaines*, 871 F.3d at 1210 (citations and quotation marks omitted).  "Exact factual identity with the previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law."  *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citation omitted).  If a plaintiff cannot establish both elements to satisfy his burden, the defendants are entitled to qualified immunity, and the court may analyze the elements "in whatever order is deemed most appropriate for the case."  *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (*citing Pearson*, 555 U.S. at 241-42).

## C.    *Deliberate Indifference*

*1.     Standard of Review*

"A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844-45 (1994) (citations and quotation marks omitted).   Correctional officials may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it.  *Id.* at 828.  "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety."  *Id*. at 834.  "Within [a prison's] volatile 'community,' prison administrators are to take all necessary steps to ensure the safety of . . . the prison staffs and administrative personnel. . . . They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves."  *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984).  The Eleventh Circuit, however, has "stress[ed] that a 'prison custodian is not the guarantor of a prisoner's safety.'"  *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313, 1321 (11th Cir. 2005) (quoting *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990)).  "Only [a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment."  *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (citation and quotation marks omitted).  "[D]eliberate indifference describes a state of mind more blameworthy than negligence" and, therefore, ordinary lack of due care for a

11

prisoner's health or safety will not support an Eighth Amendment claim. *Farmer*, 511 U.S. at 837. "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (citation omitted).

The law is well settled that establishment of both objective and subjective elements are necessary to demonstrate an Eighth Amendment violation. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014). Regarding the objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments'. . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38; *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (*quoting Farmer*, 511 U.S. at 838) (explaining that "[p]roof that the defendant should have perceived the risk, but did not, is

insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been subjectively aware of the substantial risk of serious harm in order to have had a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists – and the prison official must also draw that inference. *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (quotation marks omitted).  A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).  Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and quotation marks omitted).  "Merely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id*.  Even where a prison official perceives a serious risk of harm to an inmate, the official "may still prevail if he responded reasonably to the risk, even if the harm ultimately was not averted." *Comstock v. McCrary*, 273 F.3d

693, 706 (6th Cir. 2001) (citation and quotation marks omitted). In sum, prison officials cannot be held liable under the Eighth Amendment unless there is an objectively substantial risk of harm to an inmate, the defendants have knowledge of this substantial risk of harm, and with this knowledge, consciously disregard the risk. *Farmer*, 511 U.S. at 837.

Consequently, to survive the properly supported motion for summary judgment filed by Defendants, Plaintiff must first demonstrate an objectively substantial risk of serious harm to him existed prior to Davis's attack and "that the defendant[s] disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014) (citation omitted). If he establishes these objective elements, Plaintiff must then satisfy the subjective component. To do so, Plaintiff "must [show] that the defendant[s] subjectively knew that [Plaintiff] faced a substantial risk of serious harm. The defendant[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id.* (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a *particular threat or fear felt by [Plaintiff]*. *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003) (emphasis added). Moreover, the defendant-official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists— and the prison official must also draw that inference. *Id.* at 1349 (quotations omitted).

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (quotation marks omitted) (emphasis in original).

14

2.      *Failure to Protect or Provide Adequate Security*

Plaintiff alleges, on February 6, 2018, Defendants acted with deliberate indifference to Plaintiff's safety regarding an attack on him by another inmate while Plaintiff slept in Ventress' F-Dorm.   Plaintiff claims that Defendants knew there was a risk of assault because a verbal altercation occurred between Plaintiff and inmate Davis on February 5, during which Defendant Lewis saw inmate Davis holding a prison made knife.   Plaintiff further alleges, because Defendant McDonald failed to be at his assigned post the morning of February 6, Defendants failed to protect Plaintiff from the assault.

Defendants maintain that Plaintiff has not shown that Defendants failed to protect or provide Plaintiff with adequate security.   Defendants' evidence includes Defendants' affidavits and other prison records.

In her affidavit, Defendant Warden Jones testifies:  "I have reviewed the Incident Report (VCF-18-00278) dated February 6, 2018, and found that there was an incident involving [Plaintiff] and inmate Rodney Davis…on F4 side.   I found [Defendant McDonald] was assigned as Dormitory F Rover.   There are two sides of Dormitory F (F1 and F4)."  Doc. 33-1 at 1.

Next, in his affidavit, Defendant Lewis testifies:

> On Tuesday, February 5, 2018, I, Correctional Officer Derius Lewis was assigned to E Dorm.  At approximately 9:00 a.m., [Defendant Lewis] noticed two (2) inmates appearing to have a verbal disagreement on the yard between E & F Dorms.  [Defendant Lewis] via radio asked Officer Derjuan Smith to 10-22 with him.  [Defendant Lewis] and Officer Smith approached both inmates and verbally reprimanded them on their behavior on the yard. At this time both inmates returned to their dorms.  Approximately an hour

15

later, [Defendant Lewis] noticed a knife in E Dorm Lobby. [Defendant Lewis] asked a couple of inmates if they saw who put the knife in the lobby and no one admitted to seeing anything.

Doc. 25-1 at 1-2. Third, in his affidavit, Defendant Rouse testifies:

On February 6, 2018, I, Correctional Lieutenant Elijah Rouse was assigned as the B Day Shift Commander. At approximately 11:32 a.m., [Defendant McDonald] contacted me via handheld radio and informed me that inmate Rodney Davis…, had blood all over his upper body area, to include his face and the t-shirt he was wearing. I approached the front porch area of F Dormitory and escorted inmate Davis to the Health Care Unit where Nurse Coy Flenory immediately began assessing him. At approximately 11:37 a.m., Nurse Flenory advised me that inmate Davis needed to be transported to the hospital via ambulance. At approximately 11:30 a.m., Nurse Flenory then advised me that inmate Davis would be transported via Life Flight to Baptist South due to the severity of his injuries. Prior to inmate Davis departure, I attempted to question him concerning the incident. Inmate Davis was unable to communicate cohesively at the time. I conducted an investigation and questioned several inmates in F Dormitory concerning the incident. Following the investigation, I discovered that inmates Davis and [Plaintiff] were involved in a physical altercation over a cellular phone. Upon questioning [Plaintiff] concerning the incident, [Plaintiff] stated to me, 'He got what he deserved.' [Defendant Lewis] and I escorted [Plaintiff] to the Health Care Unit for a medical assessment. Following the assessment, [Defendant Lewis] and I placed [Plaintiff] in the Restrict Housing Unit.

Doc. 25-3 at 1-2. Last, in his affidavit, Defendant McDonald testifies:

On [Tuesday], February 6, 2018, I, Correctional Officer Lewis McDonald was assigned to F Dorm as a Rover for both sides (F1 and F4). As indicated in Incident Report VCF-18-00278, at approximately 11:30 a.m., upon entering Dormitory F4 side, I observed blood on the facial area of inmate Rodney Davis. . . . I notified [Defendant Rouse] and inmate Davis was escorted to the Health Care Unit for medical assessment. It was discovered that inmate Davis was involved in a physical altercation with [Plaintiff] over a cellular phone. During the altercation a weapon was used by both inmates. This is the extent of my knowledge of the situation.

Doc. 25-4 at 1-2.

While Plaintiff alleges that, on February 5, Defendant Lewis observed the verbal altercation between inmate Davis and Plaintiff and saw a knife held by inmate Davis,

Plaintiff does not challenge the incident report's explanation that, once the knife was ultimately recovered, it was confiscated and "placed in an evidence bag and placed in the Shift Commander's Office with the additional 'common area' contraband for later disposal." *See* Doc. 25-2 at 2.  Plaintiff also does not dispute that, once the knife was recovered and both he and inmate Davis returned to their assigned dormitories, there was no further incident or altercation with inmate Davis on February 5.  The fact that Defendant Lewis was present when Plaintiff and inmate Davis engaged in a verbal disagreement, this does not show that any named Defendant had reason to infer that inmate Davis posed a substantial risk of harm to Plaintiff.  Indeed, Plaintiff neither disputes that, once Defendant Lewis and Officer Smith verbally reprimanded Plaintiff and inmate Davis and directed them both to return to their assigned Dormitories, there was no further altercation nor further aggression.

Plaintiff also does not allege that he complained to any prison official that he was in danger of being attacked by any inmate, including inmate Davis, nor does he challenge Defendants' testimony that they were not present at the scene of the attack.  Insofar as Plaintiff alleges Defendant McDonald failed to protect Plaintiff on February 6 because he was not at his assigned post, as testified by Defendants Jones and McDonald, Defendant McDonald was assigned as "Dormitory F Rover;" "[t]here are two sides of Dormitory F (F1 and F4);" and when Defendant McDonald entered Dormitory F4 side and observed inmate Davis' injuries, he immediately notified Defendant Rouse.  *See* Docs. 25-4 at 1, 33-1 at 1.

17

In short, there is no evidence any named Defendant witnessed the assault or knew of any risk from which they could infer a substantial risk to Plaintiff.  Rather, the record establishes that the altercation occurred when inmate Davis, without warning and while Plaintiff slept, assaulted Plaintiff.

Even had Plaintiff satisfied the objective component of his deliberate indifference claim, he fails to establish the subjective component because he has not shown that any Defendant subjectively knew of a risk of harm to him posed by inmate Davis, or any inmate for that matter.  Plaintiff's contention that Defendants violated his constitutional rights because they knew of the verbal altercation that took place one day before the assault is not evidence that any Defendant knew that Plaintiff faced a substantial risk of harm. *Caldwell,* 78 F.3d at 1099-1100 (explaining a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

Further, and without disputing that inmate-on-inmate assaults occur in the correctional system, even assuming the institutional facility was experiencing understaffing or overcrowding at the time of the assault on Plaintiff, such is insufficient to establish Defendants knew a substantial risk of serious harm existed and, with such knowledge, deliberately failed to prevent the harm.  *Johnson*, 568 F. App'x at 722 (explaining that complaint properly dismissed for failure to state a claim because "[n]owhere does the complaint allege, nor can it be plausibly inferred, that the defendants subjectively foresaw or knew of a substantial risk of injury posed by [inmate-attacker]."); *Harrison v. Culliver*, 746 F.3d 1288, 1300 (11th Cir. 2014) (observing that although

increasing the number of officers in an area of the facility "may have improved security [at the prison, the warden's] decision not to do so did not create a substantial risk of harm."); *Johnston*, 135 F. App'x at 377 (observing that where allegations simply inferred that prison officials should have known the inmate-attacker posed a threat to others due to past behavior and general verbal threats, defendants were entitled to summary judgment because plaintiff provided no evidence that prison officials "had subjective knowledge of the risk of serious harm presented by [fellow inmate]" and "introduced no evidence indicating that he notified [the defendants] of any particularized threat by [his attacker] nor of any fear [he] felt."); *Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) (explaining that "because [Plaintiff] alleged no facts indicating that any officer was aware of a substantial risk of serious harm to him from [his attacker] and failed to take protective measures, his [failure to protect] claim fails."); *Staley v. Owens*, 367 F. App'x 102, 108 (11th Cir. 2010) (explaining that plaintiff failed to demonstrate supervisory liability as the mere fact that isolated inmate assaults may have occurred over several years "is not sufficient to establish that there was a history of widespread abuses that supervisors failed to reasonably respond to").

The record is devoid of evidence Defendants knew specific facts from which an inference could be drawn that a substantial risk of harm existed to Plaintiff, that Defendants actually drew this inference, and, thereafter, ignored the known risk.  Plaintiff has not presented facts sufficient to create a genuine dispute regarding "actual knowledge" of a substantial risk of harm.  Rather, the evidence indicates that inmate Davis' assault on Plaintiff was a sudden, isolated incident.  *See Curry v. Crist*, 226 F.3d 974, 979 (8th Cir.

2000) (affirming summary judgment where a prisoner was injured during a surprise attack by another inmate); *Chatham v. Adcock*, 334 F. App'x 281, 293-94 (11th Cir. 2009) (explaining that plaintiff was entitled to no relief where he failed to identify "any specific 'serious threat' from [his inmate attacker], which he then reported to [the defendants] prior to [the attack]."); *Brown*, 894 F.2d at 1537 (holding that "negligent failure to protect an inmate from attack does not justify liability under § 1983."). Inmate Davis' assault on Plaintiff and inmate Davis' subsequent death was a tragic event. It does not, however, reflect deliberate indifference by Defendants. The evidence reflects the events complained of unfolded quickly. Once Defendant McDonald saw inmate Davis injured, he immediately informed Defendant Rouse, and inmate Davis was promptly escorted to medical. Shortly thereafter, once medical personnel determined inmate Davis required emergent care, inmate Davis was transported to Baptist South via Life Flight and Defendant Rouse notified Correctional Captain Pamela Harris, Defendant Warden Jones, and Investigator James Ranson. *See* Doc. 25-2 at 6. Plaintiff also received medical care once investigation revealed his involvement in the assault. *See* Doc. 25-2 at 10.

Because Plaintiff has failed to show Defendants actually knew that a substantial risk of serious harm existed, he has failed to satisfy the subjective element of his Eighth Amendment claim as well. *Carter*, 352 F.3d at 1350. Since the record fails to demonstrate that the incident between Plaintiff and inmate Davis occurred due to any deliberate indifference or reckless disregard by Defendants, they are entitled to qualified immunity and summary judgment is due to be granted in their favor on Plaintiff's claims of failure to protect and inadequate security. *See Celotex Corp.*, 477 U.S. at 322.

20

### D.    *Supplemental Jurisdiction*

To the extent Plaintiff seeks to bring state law claims, review of such claims is only appropriate upon exercise of this court's supplemental jurisdiction.  In the posture of this case, however, exercising such jurisdiction is inappropriate.

For a federal court "[t]o exercise [supplemental] jurisdiction over state law claims not otherwise cognizable in federal court, the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a common nucleus of operative fact." *L.A. Draper and Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984) (citations omitted).   Exercising supplemental jurisdiction is discretionary. *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).  "If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims." *L.A. Draper and Son*, 735 F.2d at 428; *Hicks v. Moore*, 422 F.3d 1246, 1255 n.8 (11th Cir. 2005) (noting that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.") (citation and quotation marks omitted). Because of the Court's resolution of the federal claims in the complaint, Plaintiff's supplemental state law claims are due to be dismissed. *Gibbs*, 383 U.S. at 726 (if the federal claims are dismissed prior to trial, the state claims should be dismissed as well); *see also Ray v. Tennessee Valley Authority*, 677 F.2d 818 (11th Cir. 1982).

### IV.    Conclusion

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Defendants' motion for summary judgment (Doc. 25) be GRANTED;

2.  Plaintiff's supplemental state law claims be DISMISSED without prejudice;

3.  This case be DISMISSED with prejudice;

4.  Judgment be ENTERED in favor of Defendants;

5.  Plaintiff's request for reimbursement of all costs and fees incurred in bringing this action be DENIED.

6.  No costs be taxed.

It is further

ORDERED that **on or before May 25, 2022**, the parties may file an objection to the Recommendation. Any objection filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised this Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE on this 11th day of May, 2022.

/s/ Stephen M. Doyle
STEPHEN M. DOYLE
CHIEF UNITED STATES MAGISTRATE JUDGE